### GRANDE v. ARIZONA WAX PAPER CO. et al.

#### No. 8411.

Circuit Court of Appeals, Ninth Circuit.

June 21, 1937.

Rehearing Denied July 26, 1937.

802

James Donovan, of Los Angeles, Cal., for appellant.

Benj. W. Shipman, of Los Angeles, Cal., for appellees.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

GARRECHT, Circuit Judge.

In view of the varied attacks made by the appellant upon the bankruptcy proceedings in this matter, we will set them forth in a somewhat detailed manner.

The appellant filed a petition in voluntary bankruptcy in the court below, on October 10, 1934, and was adjudicated a bankrupt on the same day.

The trustee filed an amended application for a turnover order against the appellant, his wife, Daisy Grande, their daughter, Hazel D. Grande, and their attorney, James Donovan.

After receiving oral and documentary evidence, the referee in bankruptcy, on February 4, 1935, issued an order commanding the trustee to take immediate possession of the appellant's entire assets, using "all necessary force so to do," and restraining the appellant and the above-named members of the appellant's family and others from interfering with the trustee's possession of such assets.

The findings that formed part of the turnover order included the following:

That prior to the formation of the corporation Grande California, Inc., the appellant did business under the name of Grande California; that on or about March 2, 1934, he had many debts, and one or more creditors had obtained judgment against him; that thereupon, for the purpose of hindering, delaying, and defrauding his creditors, the appellant transferred, without consideration, certain assets to a corporation that he then caused to be formed, namely, Grande California, Inc., for the sole purpose of permitting him to retain possession of his property under the corporate name; that no person invested any money, either as a contribution to capital assets, or otherwise, in the corporation at any time; and that the appellant is the owner in fact of the corporation, its corporate stock, and all of its assets.

It was also found that the corporate assets had not been turned over to the trustee, and that there was insufficient property then held by the trustee to pay the appellant's debts.

From the foregoing facts, the referee concluded that Grande California, Inc., is the alter ego of the appellant, and that all of its assets should have been turned over to the trustee by the appellant at the time that the latter was adjudicated a bankrupt.

On February 21, 1935, seventeen days after the referee's turnover order was made and served upon the appellant's attorney, the appellant filed a motion in the court below for an order to show cause why the appellant should not be granted an extension of time in which to present to the referee a "petition for a review of the ruling of the Referee," and why the referee should not certify to the court below a transcript of his proceedings in support of the findings, etc.

In his petition, the appellant set forth that his attorney did not have the rules of procedure in bankruptcy matters in his office, and added: "He [the appellant's attorney] discovered in the local Court rule 84, that he should have filed with the Referee a petition for a review of the Order made by the Referee, within ten days from the service of the Findings upon him. He has examined a few decisions under this rule and finds that this being a rule established by the Court, its construction of the rule gives it the full force and effect of a statutory enactment; however, believing that it is within the judicial discretion of the Court making the rules to relieve one of an error of this character, he should be relieved from this default and be granted an opportunity to have a review of the Findings and Order of the Referee, and the time be extended in which to prepare his exceptions to Findings of the Referee."

The petition thereupon set forth a number of reasons why the appellant should be relieved from the consequences of his attorney's admitted error and default: That the referee who heard the case is the only

one who can certify it to the court; that the referee left his office on February 5 or 6, 1935, and was not scheduled to return until March 15, 1935, so that even if the petition for review had been prepared within the prescribed ten days, the referee would not have been present to certify it to the court; that the attorney for the trustee announced there would be a further hearing of the evidence of Mrs. Daisy Grande upon the return of the referee; that the trustee would suffer no hardship by the delay; that there was a direct charge of fraud against the appellant bankrupt, and an implication of a participation and direction of the appellant's acts by his attorney, in incorporating the Grande California, Inc., company; and that the court could exercise its judicial discretion to relieve either an attorney or a litigant from embarrassment, etc.

Hearing was had on the foregoing petition on February 25, 1935, and two days later the court below denied the appellant's request. In its opinion and order denying the petition, the court said: "The counter showing made by the trustee quite clearly shows that the hearing was duly had as to the matter determined and that due notice of the decision was given to counsel for the bankrupt. * * * It is generally held that ignorance of counsel of the provisions of a rule of court is not sufficient to authorize vacation of judgments or orders. This because counsel is presumed to be acquainted with such rules. California Juris. (see Vol. 14, Sec. 99)."

The court below, however, did not rest its decision entirely upon the procedural point alone, although, in our view, it might well have done so without abuse of sound judicial discretion. The learned District Judge proceeded to say:

"Considering the merits of the case, it is not made to appear that injustice will result to the bankrupt by the enforcement of the order. There seemed to have been no conflict as to the fact that the Grande California, Inc., was a mere vehicle used by the bankrupt for the conducting of business. Where such is the case, and as is apparent here, bankrupt was the mere alter ego of the corporate organization. He owned all of the stock, except perhaps some qualifying shares, and was, in fact, necessarily the owner in turn of all of the corporate property. * * *

"Counsel for the bankrupt, who is a reputable practitioner at this bar, seems to be of the opinion that there is some reflection cast upon him by reason of the terms of the order of the referee, because that counsel was employed to organize the corporation in question. I am not of the view that counsel should make any such assumption," etc.

"I am of the view: (1) That the showing as to the mistake of counsel is not sufficient to justify the making of the order here sought; (2d) Assuming that the omission to act was excusable, the facts as presented touching the propriety of the order made by the referee are insufficient to support a substantial claim for error."

On September 26, 1935, the referee filed in the court below a "certificate of compliance" containing the following averment: "* * * that so far as appears from the records and files of my office and matters coming to my attention said Bankrupt has complied with all the orders of the Court and the requirements of the Bankruptcy Act and has committed none of the offenses and done none of the things prohibited by said act."

On October 8, 1935, the appellant filed a petition for discharge. The court fixed December 2, 1935, at 10 a. m., as the date on which a hearing would be had upon that petition, at which time creditors and other interested persons might appear to show cause why the petition should not be granted.

At the appointed hour, the Arizona Wax Paper Company, one of the appellees herein, filed specifications of grounds of opposition to the appellant's discharge. Among the averments contained in those specifications were the following: "That, within eleven (11) months immediately preceding the filing of the petition herein by the said bankrupt, said bankrupt transferred and concealed his property, with the intent to hinder, delay and defraud his creditors. That such transfer and concealment was accomplished by the bankrupt by the transfer of his assets to a corporation under the name of Grande California, Inc., and was [sic] so transferred within said period for the purpose of defrauding his then existing creditors. That, at said time, this objecting creditor was a creditor of said Joseph H. Grande. That said Joseph H. Grande has turned over to said corporation more than one dollar ($1.00) in cash, and various other assets."

After referring to the turnover order of February 4, 1935, which was attached to

the specifications and made part thereof, and reciting that such order had become final and had not been revised, the specifications continued: "That said bankrupt knowingly and fraudulently omitted the property turned over to the corporation, and in existence at the time of bankruptcy, from his schedule of assets herein, and failed to reveal to said trustee the existence of the same or the facts as to the title of said corporation to said property, and fraudulently and knowingly concealed the said facts from said trustee, and, on the contrary, maintained that he had but a small stock interest in said corporation, while, in truth and in fact, said corporation belonged wholly to said bankrupt, was controlled and dominated by him, and was his alter ego. That said corporation had no permit to issue stock at any time before October 10, 1934."

The specifications also charge that the appellant, within four months prior to the filing of his petition, transferred property to his wife, for the purpose of defrauding his then existing creditors, and that, for the purpose of concealing his title to the property involved, made payments on purchases of automobiles in the name of his wife, and payments on purchases of realty in the name of Hazel D. Grande, his daughter.

The specifications of the Arizona Wax Paper Company were acknowledged by one of the members of that partnership, but were verified by Benjamin W. Shipman, its attorney, who was also the attorney for the trustee in bankruptcy. The reason given for the attorney's making the verification is that the members of the partnership "are not within the County of Los Angeles," where the court below sat.

The Sun State Produce Exchange, of San Francisco, Cal., also filed specifications opposing the appellant's discharge in bankruptcy, at 4:30 p. m. on December 2, 1935, the date set for the hearing of objections to such discharge. Those specifications were verified by J. W. Asher, the managing agent of the Sun State Produce Exchange. The verification contained the following language: "* * * that the same is true of his own knowledge, except as to the matters therein stated upon his information or belief, and as to those matters that he believes it to be true. That affiant makes this verification for the reason that the facts are within his knowledge and that no officer of the corporation

is present within the jurisdiction of this court."

The Sun State specifications were countersigned by Mr. Shipman, who was the attorney for that objecting creditor also.

In all material particulars, the specifications filed by the Sun State Produce Exchange were identical with those submitted by the Arizona Wax Paper Company, and summarized above.

On the same day that both sets of specifications were filed, the court below directed the referee as special master to hold hearings and to report on the creditors' objections.

On August 6, 1936, the special master presented his report to the court. The referee in bankruptcy who signed the report as special master was not the same referee who had made the turnover order of February 4, 1935.

In his report, the special master referred to hearings held before him, summarized the turnover order, reviewed some of the testimony upon which that order was based, and outlined the proceedings that took place after the order was filed. The special master reported: "The testimony of the bankrupt throughout the proceedings showed an entire lack of good faith and desire on the part of the bankrupt to tell the truth about his financial affairs."

The master's report also stated that, on October 9, 1934, the appellant transferred to his wife the sum of $1,395; that on October 10, 1934, the day on which the appellant filed his petition and was adjudicated a bankrupt, he gave his wife $750; that, when questioned regarding these transfers to his wife, the appellant "gave no explanation of his act or acts and claimed that he did not remember the occurrence"; and that, within eleven months prior to the filing of his petition, the appellant transferred certain assets to the corporation, to hinder his creditors, etc.

In conclusion, the special master recommended that the discharge of the appellant be denied.

On August 17, 1936, the appellant filed exceptions to the report of the special master. These exceptions are more in the nature of a brief and seem, indeed, by reference to be made part of the appellant's opening brief. The reason given for that unusual procedure is that the appel-

lant "is wholly unable to pay for any extended details, either in the transcript or the brief, and we curtail the same for that reason." Some of the statements contained in the exceptions attempt to impugn the motives of the appellant's adversaries, and are wholly unsupported by the record before us. For example, the appellant asserts:

"Mrs. Joseph H. Grande, a daughter, Hazel Grande, a son, Robert Grande, have been from 1934 up to the hearing on this matter, pursued by secret investigations, to see perchance if anywhere there could be found anything that would look crooked, upon which the protestants in this case, and the representative of the protestants could hang their hat. * * *

"The charges must always be specific and they must be of that specific character that they are of sufficient legal force to indict and prosecute the individual under the different Sections of the bankruptcy Act, but unless a criminal act can be based upon allegations, it is little less than reprehensible for a creditor or his attorney to file a protest against his discharge, when at the time of the filing of the protest it is a well known fact that it is only to harass and annoy rather than to benefit the creditors."

We do not regard such statements as forming an appropriate part of exceptions to the report of a special master.

On September 15, 1936, the court below entered an order and decree overruling the appellant's exceptions to the special master's report, adopting the master's conclusion, and denying the appellant's petition for discharge. From that order and decree, the present appeal has been taken.

The appellant's opening brief contains no alphabetical table of cases, textbooks and statutes cited, as required by rule 24 of this court. Indeed, in the brief proper there are cited no authorities of any kind. All the citations are grouped in the appendix, and the cases are referred to only by volume and page numbers, with no titles showing parties plaintiff and defendant. Furthermore, the assignments of error are objectionably argumentative. Randolph v. Allen (C.C.A.5) 73 F. 23, 29; O'Brien's Manual of Federal Appellate Procedure (2d Ed.) p. 108.

Despite the defects in the presentation of the appellant's argument, we will consider it on its merits.

In his brief, the appellant states that he brings "this appeal, so far as the record shows, upon the turnover order of February 4, 1935." In his petition for appeal, however, he states that he conceives himself aggrieved by the order and decree of September 15, 1936. We will consider the sufficiency of each order under attack.

General Order No. 27 (11 U.S.C.A. following section 53), established for bankruptcy procedure by the Supreme Court, reads as follows: "When a bankrupt, creditor, trustee, or other person shall desire a review by the judge of any order made by the referee, he shall file with the referee his petition therefor, setting out the error complained of; and the referee shall forthwith certify to the judge the question presented, a summary of the evidence relating thereto, and the finding and order of the referee thereon."

It will be observed that the foregoing order fixes no time wherein a petition for review must be filed. Rule 84 of the court below, however, provides:

"A petition for a review of an order made by a Referee as provided in General Order No. XXVII of the General Orders in Bankruptcy must be filed with the Referee within ten days from the date of notice of such order. The Referee may require to be paid in advance in addition to the costs referred to in Rule 81, his actual expense in making a summary of the evidence.

"For good cause shown, the Referee may at any time within said period of ten days, extend the time an additional thirty days within which a petition for review may be filed."

This identical rule was construed and upheld by this court in Patents Process, Inc., v. Durst, 69 F.(2d) 283, 284, 285: "The rule of the District Court wherein the matter was pending provided that a petition for review under General Order 27 (11 U.S.C.A. following section 53) of the general orders in bankruptcy must be filed with the referee within ten days from the date of notice of such order. Such a rule limiting the right of appeal to ten days is held valid in Re David (C.C.A.) 33 F.(2d) 748; Roberts Auto & Radio Supply Co. v. Dattle (C.C.A.) 44 F.(2d) 159. * * * The order of February 18, 1931, allowing these claims has become final. The referee himself could not set it aside. In re Faerstein (C.C.A.) 58 F.(2d) 942. See, also, In re Marks (D.C.) 171 F. 281; In re

Greek Mfg. Co. (D.C.) 164 F. 211. In order to attack this allowance it was necessary that a petition for review be filed in the District Court within ten days. This was not done and no appeal to this court lies from the order of the referee *except by way of petition to review and an appeal from the order of the District Court on the petition.* [Cases cited.]"

The appellant admittedly failed to file a petition for review within the prescribed ten-day period. The court below, in the exercise of a judicial discretion that has not been shown to be unsound, ruled that: "The counter showing made by the trustee quite clearly shows that the hearing was duly had as to the matter determined and *that due notice of the decision was given* to counsel for the bankrupt." The court further held that "the showing as to the mistake of counsel is not sufficient to justify the making of the. order here sought."

But the court below went even farther, adding: "Assuming that the omission to act was excusable, the facts as presented touching the propriety of the order made by the referee are insufficient to support a substantial claim for error."

Both as to the procedural, ground and as to the merits, the appellant has wholly failed to establish that the learned district judge committed an abuse of sound judicial discretion in denying the appellant's motion for an order to show cause why the latter should not be granted an extension of time, etc.

The next contention urged by the appellant that the first referee's certificate of compliance, dated September 23, 1935, establishes that the appellant was entitled to a discharge in bankruptcy. It may readily be conceded that this certificate is inconsistent with the recitals in the prior turnover order, with the report of the second referee as special master, of August 6, 1936, and with the court's order denying a discharge.

■ But even if the first referee was in error in issuing this certificate of compliance, *such error cannot affect the validity* of the prior turnover order, which, as we have seen, had become final. "The referee himself could not set it aside." Patents Process v. Durst, supra. See, also, In re Faerstein (C.C.A.9) 58 F.(2d) 942, 943.

■ Nor could the improvident issuance of a certificate of compliance affect the validity of the creditors' objections, the report thereon of the second referee as special master, or the court's order denying a discharge. The findings of a referee are always subject to the review of the court. In re Flanders Co. (C.C.A.6) 32 F.(2d) 654, 655. It would be indeed a novel proposition in the law of bankruptcy to assert that a District Court is bound by the referee's certificate of compliance.

■ The appellant also insists that the protest of the Sun State Products Exchange should not have been considered by the court for the reason that it was filed at 4:30 p. m. on December 2, 1935, instead of at 10 a. m. on that day.

The objection is wholly devoid of merit. There is no provision in the Bankruptcy Act, in General Order 32 (11 U.S.C.A. following section 53), or in the rules of court, which hold the objecting creditor to any hour or minute of "the day when the creditors are required to show cause."

In Lerner v. First Wisconsin Nat. Bank, 294 U.S. 116, 119, 55 S.Ct. 360, 362, 79 L.Ed. 796, the court said, with reference to General Order 32, as amended (11 U.S.C.A. following section 53): "The language of the amended order is mandatory; it is controlling in circumstances like those here presented; strict compliance should be accorded. Under Order 37 (11 U.S.C.A. following section 53), and permissive provisions of the Bankruptcy Act, we think the courts may exercise discretion sufficient for the successful conduct of proceedings in varying circumstances. Thus, while an objecting creditor must file specifications showing the grounds of his opposition on the *day* when creditors are required to show cause, that *day* may be fixed or postponed by the court in view of the existing situation." [Italics our own.]

The precise question herein presented was decided in the case of In re Barrager, (D.C.) 191 F. 247, 249: "It appears from the petition filed in behalf of the creditors that their attorney appeared before the referee at 9:25 o'clock a. m. of the day that they were required to show cause, which was 25 minutes after the hour upon which they were required by the referee to appear. But the referee could not rightly thus limit the time of their appearance, and they should have been permitted to enter their appearance in opposition to the discharge at any time (during the business hours at least) on the 16th day of September and to file their specifications of grounds of opposition thereto within 10 days

thereafter. If the judge or referee might require them to appear at a particular hour of the day on which they are required to show cause, it would be too strict a rule to adjudge them in default if they should fail to appear upon the minute specified, but did appear within a few minutes thereafter. The referee therefore erred in denying these creditors the right to enter their apparance on the day fixed for them to show cause, and to file specifications of their objections to the discharge within 10 days thereafter."

While General Order 32 has been amended since the Barrager Case, supra, was decided, there is nothing in the amendment that detracts from the applicability of the reasoning found in that opinion.

See, also, 1 Collier on Bankruptcy (13th Ed.) p. 493.

■ The appellant next attacks the specifications of the Arizona Wax Paper Company, both as to form and as to content. We have already set forth the substance of the two sets of specifications, and, without stopping to discuss the various criticisms offered by the appellant, we need only to say that the specifications set forth acts constituting statutory grounds for the denial of a discharge in bankruptcy.

In part, 11 U.S.C.A. § 32, Bankr. Act § 14, as amended, reads as follows: "(b) The judge shall hear the application for a discharge and such proofs and pleas as may be made in opposition thereto by the trustee or other parties in interest, at such time as will give the trustee or parties in interest a reasonable opportunity to be fully heard; and investigate the merits of the application and discharge the applicant, unless he has * * * (4) at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition, transferred, removed, destroyed, or concealed or permitted to be removed, destroyed, or concealed any of his property, with intent to hinder, delay, or defraud his creditors."

A comparison of the foregoing provisions, with the allegations of the specifications filed by the creditors in the instant case, will at once disclose that those allegations bring them within the purview of subsection (4), supra, as was reported by the special master.

On the question of form, the appellant complains of the sufficiency of the verification; and contends that, since Mr. Ship-

man appeared in the bankruptcy proceedings as attorney for the trustee, "he could not appear as special attorney or private attorney for any one of the creditors."

It is difficult to see how this alleged quality of Mr. Shipman's functions could have injured the appellant, or have vitiated the subsequent actions of the master and the district judge.

We will concede, only for the sake of the argument, that the verification to the objections filed by the Arizona Wax Paper Company is insufficient. There remain the specifications presented by the Sun State Produce Exchange. No complaint is made, or can be made, that the verification to the latter objections is insufficient. Those specifications were filed on time, and contain allegations setting forth lawful causes why discharge of the bankrupt should be denied. It therefore is unnecessary to consider the attack made upon the verification of the Arizona Wax Paper Company.

■ Finally, the appellant attacks the report of the second referee, acting as special master. In this attack, the appellant adopts by reference his fifteen-page exceptions, printed in the record. Although this method of briefing a case is somewhat unusual, we will consider the arguments incorporated in the exceptions.

Some of those arguments are found elsewhere in the appellant's brief, and have already been considered. For the rest, they deal chiefly with the contention that the master's findings were not sustained by the evidence adduced before him.

The answer to that argument is twofold.

In the first place, the appellant concedes that the evidence presented before the referee and trustee has not been made part of the record in this court. We are therefore in no position to review the sufficiency of the findings of the referee, acting as special master.

■ Secondly, appellate courts will not disturb, except for manifest error, findings of fact concurred in by the referee and the District Judge. Ott v. Thurston (C.C.A.9) 76 F.(2d) 368, 369, 370, and the many authorities there cited.

We have carefully read the record here presented, and find no error, manifest or otherwise, in the findings of the special master or in the decree of the lower court, denying the appellant a discharge in bankruptcy.

Accordingly, the decree is affirmed.