### In re CHRISTIN.

### In re LA CIENEGA RANCHING CO.

Nos. 38043–M, 39848–H.

District Court, S. D. California, Central Division.

Feb. 4, 1943.

Charles A. Christin, of San Francisco, Cal., for Estelle C. Porter Christin, debtor-bankrupt, and La Cienega Ranching Co., debtor-bankrupt.

Paul E. Iverson, of Los Angeles, Cal., for Security-First Nat. Bank of Los Angeles, petitioner.

McCORMICK, District Judge.

These are reviews of orders of the conciliation commissioner dated August 27, 1942, denying motions of petitioner on review.

The same interests being involved in each above-entitled matter, these findings, rulings and orders relate to both debtor estates. For the purposes of brevity, Estelle C. Porter Christin will be referred to as the "Debtor," Security-First National Bank of Los Angeles as the "Bank," and the La Cienega Ranching Company as the "Company."

The record discloses that the Debtor was bona fide engaged in agricultural pursuits, operating approximately 164 acres of land producing principally citrus fruits and walnuts, and known as the "Upper Ranch." Being unable to meet her financial obligations as they matured, and desiring to effect a composition or extension of time within which to pay her debts, the Debtor on March 1, 1941, filed a petition under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, and invoked the remedial terms of subsections a to r of Section 75 of that Act. Thereafter the Bank filed a petition in the Debtor's proceeding for an order permitting the Bank to foreclose a deed of trust and other security on a parcel of farm land now held by the Company, in which parcel of land the Debtor has a reversionary interest in approximately 36.15 acres thereof. A promissory note of $127,000, secured by obligations and whereupon there remains an unpaid balance of principal in the sum of $121,623.12, with interest and advances as shown in the claim of the Bank on file in these proceedings, are the actuating instrumentalities of the proceedings before

the court. The instruments of obligation are signed and executed by Charles A. Christin, husband of the Debtor, Benjamin F. Porter, Vera Pernau Porter and Kate C. Boruff.

The Bank's petition was heard by the commissioner, who recommended the entry of an order authorizing the Bank to maintain foreclosure proceedings and enforce its rights under its securities. On July 31, 1941, this court granted the Bank the right to foreclose and enforce its demands in the securities.

On June 16, 1941, subsequent to the filing of the Bank's petition for permission to foreclose on the above-mentioned properties but prior to the making of this court's order authorizing foreclosure, Charles A. Christin, in whose name title (subject to the aforesaid reversions) to the property sought to be foreclosed then stood, caused to be formed the Company and conveyed his interest in the real property to such newly created entity.

The Debtor being unable to obtain the acceptance of a majority in number and amount of all creditors whose claims would be affected by her composition or extension proposal, on November 12, 1941, amended her petition and invoked subsection a of Section 75 of the Act and she was on the same day adjudged bankrupt under said subsection.

On December 23, 1941, three days prior to the date fixed for the trustee's foreclosure sale of the property under the authorization of July 31, 1941, the Company filed its petition under Section 75 of the Bankruptcy Act. The Bank on February 26, 1942, again filed a second petition in the debtor' proceedings for authority to foreclose on the deed of trust and to enforce its rights in the same security given for the payment of the obligations to the Bank, and, further, the Bank on March 5, 1942, filed a petition in the Company matter for an order dismissing the proceedings on the ground that the filing under the Bankruptcy Act and the so-called Frazier-Lemke provisions of said Act was not in good faith and that the Company was not a bona fide farmer. These matters were heard by the commissioner, and all evidence and exhibits introduced at the hearings were by stipulation considered to be introduced in both proceedings.

Under date of August 27, 1942, orders denying both petitions of the Bank were made by the commissioner. Thereafter the Bank filed its petition for review in each matter. The questions for decision are whether the record supports the orders of the conciliation commissioner. We are of the opinion that both orders are erroneous.

The record before us discloses and we find substantially the following factual situation: Estelle C. Porter Christin, as a result of the dissolution of a family corporation called the G. K. Porter Company, became owner in fee of the property referred to in the record as "Upper Ranch," and her mother, Kate C. Boruff, became owner in fee of the properties now held by the La Cienega Ranching Company and commonly called the "Home Ranch," subject to a reversionary interest in Estelle C. Porter Christin in approximately 36.15 acres therein. A similar interest of approximately 17 acres in this parcel was vested in Benjamin F. Porter, son of Kate C. Boruff and brother of Estelle C. Porter Christin. One Boruff, the husband of Kate C. Boruff, and who subsequently acquired an interest in the "Home Ranch," dissipated the properties to such an extent that many liens and judgments attached to the "Home Ranch" properties. Charles A. Christin, the husband of the Debtor, who had previously purchased a number of such liens and judgments from one Cary, a prior purchaser from the lienholders, thereafter executed upon the obligations, and at the sheriff's sales in 1920 acquired all right, title and interest in the properties except the respective reversionary interests of Benjamin F. Porter and Estelle C. Porter Christin in the above-mentioned approximately 17 acres and approximately 36.15 acres parcels. Thereafter a loan was obtained from the Bank, the proceeds of which were used principally to pay off Cary.

It again became necessary to obtain additional funds for the continued operation of the "Home Ranch," and the above-mentioned note of Charles A. Christin, Kate Boruff, Estelle C. Porter Christin, Benjamin F. Porter and Vera Pernau Porter, and its securities upon the "Home" properties was delivered to the Bank in November, 1937. The payments upon the obligations not being met as they fell due, an operating agreement among the parties was entered into in June, 1939, whereby, in consideration of not foreclosing upon the premises for a period of three months, possession of the "Home Ranch" was given to the Bank for operation. At the insist-

ence of Charles A. Christin a clause was incorporated in the above operating agreement providing in substance that the signatories or any corporation to be formed by any of the parties signing the document in no way waived the benefits of any legislation given for the relief of financial conditions existing at the time of signing; and, further, that this specifically covered all sections and amendments to the Bankruptcy Act. After operating the property for a time the Bank turned the property back to Charles A. Christin in March, 1941.

It is reasonable to conclude, and we do conclude from the evidence that Charles A. Christin was none other than the real owner of the property at the time he transferred the property to the Company. On May 1, 1923, in a letter addressed to Benjamin Porter relating to the financial plans for the property, Christin stated he held legal title to the "Home" place by reason of the execution sales, but that he held such title in trust for the benefit of himself, Estelle C. Porter Christin and Benjamin Porter in equal thirds. When the entire record is considered, it is clear that Charles A. Christin's interest in the property and his control of it during the years when the title remained in him do not establish solely a trusteeship. The evidence shows that subsequent to May 1, 1923, and prior to June 16, 1941, the date Christin transferred the property to the Company, the parties did not consider their arrangement as a trust. Benjamin Porter testified that he transferred his reversionary interest and any other interest he held in the property now owned by the Company to Charles A. Christin in January, 1927, as security for a loan. Porter testified further that while he, Estelle C. Porter Christin and Charles A. Christin had advanced substantial sums of money for the carrying on of the property, a written document memorializing the manner and method by which Charles A. Christin held title to said property was created. Nothing is stated therein relating to a trust or even a partnership in the properties. The agreement merely provided that when the ranch shall have been sold by Charles A. Christin the profits resulting from the sale shall be divided among the parties in equal thirds after certain advances formerly made by the parties were first repaid. In the Debtor's schedule of assets for her separate Frazier-Lemke proceedings her interest in the property was not set forth as a beneficiary of a trust, nor as a member of a partnership, but merely as a "beneficial interest in 1/3 of the net profit which may result from the sale or other disposition of the Christin Porter Ranch in San Fernando, California." It would therefore appear that Christin's sole obligation concerning the property would be to comply with the terms of the 1933 agreement relating to the division of profits, if any, should the property be sold by him. It is only by a strained construction of the record before the court that the conclusion that Christin was merely a nominal owner can be made. Such a determination is unwarranted and improper.

■ Charles A. Christin at all times being an attorney at law, established in the active practice of his profession at San Francisco, California, is not a bona fide farmer. His principal income not being derived from farming operations, he could not come within the protective and remedial provisions of the Frazier-Lemke Act or of the measures of the Bankruptcy Act designed and intended exclusively for persons in the status of "farmer" within the meaning of the Bankruptcy Act, and his good faith and motive in organizing and forming the Company becomes material in these proceedings.

■ The Company was formed and the property owned by Christin was transferred to it at the time Christin had been informed by the Bank that it intended to foreclose on its security and at a time the Bank had applied to the commissioner for permission to foreclose on the involved property. After Christin incorporated the Company 80% of the capital stock was assigned to his wife, who was already in proceedings under Section 75 of the Bankruptcy Act, and 20% of the capital stock to his son Charles Christin, Jr. The record does not disclose that any consideration was given for this stock. The officers of the corporation consist of the Debtor as president-manager, Thomas J. Keegan, Mr. Christin's law associate, as vice-president, and Mrs. Joan Reiter, Christin's secretary-employee, as secretary. The employees upon the ranch, the corporation's sole asset, are the same as those employed thereon while Christin held title to the property. No substantial change in the manner and method of the ranch's operation has resulted since the transfer to the corporation, and funds acquired from fruit pools established prior to date of incorporation, were

used in the subsequent operation of the corporation. In addition, Charles A. Christin, himself, contributed some funds toward the operation of the ranch, although the ranch is claimed to be owned by the new entity. The sole asserted consideration given by the Company for the transfer of Christin's interest in the properties consists of an assumption of his liabilities relating principally to the property transferred, which assumption alone concededly in no way relieved Christin of his obligation to pay them.

There is a duty in the courts to see that the provisions of the Bankruptcy Act are not abused and that its privileges are extended only to those who are within its contemplation. While it is true that a farmer may avail himself of the benefits contained within Section 75 of the Bankruptcy Act no matter how severe his financial status may be, that rule has no application where a subterfuge has been created by one not a farmer whose obvious purpose it is to circumvent and evade the statutory essentials and thereby temporarily escape liability upon his obligations.

The language of the court in Re Fullagar, D.C., 8 F.Supp. 602, 603, is significantly applicable to the problem before us, wherein it is stated: "It is beyond question that such act was passed for the benefit of bona fide farmers. It was enacted for relief of farmers embarrassed by debts which could not be immediately met. It never could have been intended to afford means whereby one able to meet his obligations as they mature could escape payment of such obligations by transferring property to another, the latter taking the benefit of the Bankruptcy Act in question. Laws are enacted to protect personal and property rights—not to permit destroying them by the means adopted here. Here we have an illustration which discloses how purposes other than those intended by the act might be accomplished, if this petition were upheld."

We conclude by holding that the order of the conciliation commissioner in the Company proceedings, Number 39848–H, dated August 27, 1942, should be reversed, and that the Company proceeding should be and is hereby dismissed. The order of the conciliation commissioner in the Debtor estate, Number 38043–M, dated August 27, 1942, is vacated, annulled and set aside, and the order of this court dated

July 31, 1941, is effectual and enforceable. Exceptions noted and allowed on all adverse rulings. Section 75, sub. s (4), of the Bankruptcy Act; General Order in Bankruptcy Number 50, 11 U.S.C.A. following section 53; Section 39, sub. c, of the Bankruptcy Act, 11 U.S.C.A. § 67, sub. c; Grande v. Arizona Wax Paper Co., 9 Cir., 90 F.2d 801; Patents Process, Inc., v. Durst, 9 Cir., 69 F.2d 283; In re Faerstein, 9 Cir., 58 F.2d 942; Donald **v.** Bankers Life, 5 Cir., 107 F.2d 810.