## In re N. H. DEVELOPMENT CO.
### No. 10414.

District Court, N. D. California, N. D.
June 27, 1945.

Charles A. Christin, of San Francisco, Cal., and Joseph D. Taylor, of Los Angeles, Cal., for N. H. Development Co., debtor.

G. D. Schilling and S. J. Tosi, both of San Francisco, Cal., for Bank of America National Trust & Savings Ass'n, creditor.

WELSH, District Judge.

N. H. Development Company, a Corporation, hereinafter called the "Company," filed its petition herein under Section 75 of the Bankruptcy Act 11 U.S.C.A. § 203, on the 16th day of June, 1943. Listed as an asset in its schedules was real property in the County of Butte, State of California, consisting of approximately 130 acres. Said property was known as the Rancho Golden Grove, which will be referred to hereinafter as the "Ranch."

Said petition was executed on behalf of said Company by Noel Newton as President and as Attorney in Fact for John R. Newton, Secretary.

Bank of America National Trust and Savings Association, hereinafter referred to as the "Bank", filed a petition for dismissal of the above entitled proceeding on the 9th day of October, 1943. It alleged that it is the holder of a first deed of trust on the Ranch. It refers to an Operating Agreement executed by said Company under date of October 5, 1940, whereby it was requested to take over the supervision and management of said Ranch.

Said petition raised the issue that neither Robert W. Hodgson, Jr. (one of the incorporators of said Company), nor Noel Newton is a farmer as defined by Section 75 of the Bankruptcy Act; that the Company is not a farming corporation and that the stock therein is not owned by farmers as defined by subsection r of Section 75 at paragraph (4) of subsection s of Section 75.

Said petition was referred to the Conciliation Commissioner for Butte County for hearing. Coyle E. Bybee, as such Commissioner, filed a report herein on the 23rd day of September, 1943, wherein he found:

"While it is true that Noel Newton occupied the dwelling on the property and raised garden produce and berries for his own use, the evidence does not show that he was carrying on any farming operations or had any farm income after said date.

"Hodgson himself was not a farmer at any time and apparently had no specific occupation. Neither of these persons can be classed as being a farmer on June 16, 1943, as defined by Section 75 sub. r of the National Bankruptcy Act."

Said Commissioner recommended that the petition of the Bank for dismissal of the above entitled proceeding be granted.

Objections and exceptions were filed by the debtor on November 17, 1943. Various continuances were had at the request of the parties, testimony was taken by the above entitled court, and the matter submitted on briefs.

Two inter-related questions are presented: (1) Is the Company a farming corporation as defined by Section 75, and (2) was Noel Newton a farmer on the date of filing the petition?

Section 75, subdivision s, paragraph (4), of the Bankruptcy Act provides: "The provisions of this Act shall be held to apply also to * * * farming corporations where at least 75 per centum of the stock is owned by actual farmers * * *."

The burden of proving that it was a farming corporation was on the Company.

"Appellee's petition alleged that appellant was not a farming corporation, and that, therefore, the court had no jurisdiction. * * * Hence the burden of proving this alleged fact rested on appellant." McLaughlin Land & Livestock Co. v. Bank of America, 9 Cir., 122 F.2d 193, 194.

The Articles of Incorporation of the Company do not include the usual general purposes clauses used in incorporating companies whose business is principally farming. They do, however, include: "* * * c. * * * operate and work * * * and generally to deal in real estate, buildings and improvements." The Commissioner concluded that farming was embraced within this language.

Mr. Newton testified at the hearing before the Commissioner that no stock was ever issued by the corporation; "It was not issued at all. At that time Mr. Hodgson and I owned the ranch in equal shares, and we just run it under an agreement."

Not to foreclose the debtor on this ground alone, it will be assumed that Newton acquired a substantial interest in the Com-

pany. Even then, can the Company qualify under the provisions of Section 75?

Mr. Hodgson was admittedly not a farmer. Newton's testimony on this was:

"Q. And Mr. Hodgson was not a farmer? A. That is right."

Subsection r of Section 75 defines a farmer: "includes not only an individual who is primarily bona fide personally engaged in producing products of the soil, but also any individual who is primarily bona fide personally engaged in dairy farming, * * * or the principal part of whose income is derived from any one or more of the foregoing operations * * *."

No claim is made that the principal part of Newton's income was derived from farming operations.

Was he "primarily bona fide personally engaged in producing products of the soil"?

Testimony showed that his activities were primarily in fields other than "producing products of the soil." In 1914 he engaged in the occupation of a building contractor for one and one-half years. Thereafter his principal occupation was "buying, operating, developing and selling real estate." His application for a real estate license filed July 31, 1937, specified that he had twenty-four years' experience in this line.

While in Buenos Aires, he carried on correspondence with Henry Meiser former owner of Rancho Golden Grove. He stated therein that he was interested in land promotion deals, and that "opportunity ads" in newspapers were "right down my alley."

It was through such an advertisement that Newton contacted Robert W. Hodgson, Jr. He obtained an option on the Ranch and negotiated an agreement for its purchase by Hodgson as trustee under the will of Olive M. Williams, deceased.

Newton himself testified that all he did while on the Ranch from June, 1939, to July, 1940, was some work in the vegetable garden.

He wrote Meiser on October 3, 1940, that he and Hodgson were then interested in a mining venture; that they were all through with the Ranch and that the partnership between them had terminated.

Floyd Humphrey, Manager of the Oroville Branch of the Bank of America, testified that the next time he saw Newton after the Authorization Agreement was executed was approximately the middle of November, 1940, on which occasion Newton requested withholding filing notice of default, under the deed of trust, as he had a purchaser for the property.

Russell H. Pearce, Vice President of the Bank of America at San Francisco, testified that Newton made numerous requests of him for postponements.

At the hearing before the Commissioner, Newton testified at first that he had no occupation, but on further examination stated that he was interested in numerous mining deals and other business ventures. One of these had to do with a cotton mill in Orange County, and another covered the sale of a hair restorer.

Examined as to what work he performed on the Ranch from the date of the Authorization Agreement, October 5, 1940, to the date of the filing of the petition under Section 75, June 16, 1943, he testified that he did no actual work on the Ranch. He admitted that he did not talk to any of the workmen on the place with the exception of John Cabral, the irrigator, to whom he talked in 1943.

He admitted that from October, 1940, to November, 1943, neither he nor the Company paid any of the operating expenses of the Ranch.

William H. Cooper, District Manager of California Lands, Inc., testified that he regularly inspected the Ranch from October, 1940, to December 6, 1943, on which last mentioned date he saw Newton on the property for the first time; that Newton, on said occasion, took a shotgun and shot a tire off a car belonging to California Lands.

The effect of the testimony at the Commissioner's hearing and in this court is that Newton did not qualify as a farmer within the meaning of the word as used in Section 75 of the Bankruptcy Act. The expression "bona fide" is used twice in subsection r of said Section. Such use indicates the weight given by the legislative branch of the government to good faith as an element in determining whether or not a person is to be regarded as a farmer. It does not appear that Newton was actually, in good faith, a farmer at the time he signed and verified the original petition of the company herein on June 14, 1943.

The words "primarily" and "personally" are also twice used in said sub-section in connection with the words "engaged in." Newton appears to have been primarily, personally engaged in promotional activi-

ties. His initial connection with the Ranch was through Henry Meiser, the former owner, in 1936 when Newton sought to obtain a loan from him. After he brought Hodgson and Meiser together on a deal for the purchase of the Ranch, he continued to endeavor to adjust financial affairs in which Meiser, Hodgson and he were interested.

 His living on the Ranch did not make him a farmer, for, as testified by the witness John Cabral, he did nothing with reference to actual ranch work. "Just as residence elsewhere than on the farm where his operations occur does not prevent one from being a farmer, so residence upon a farm—if residence there be conceded—does not make him a farmer." In re Jordan, D.C., 48 F.Supp. 889, 891. Newton's own testimony relative to working in the vegetable garden could not be construed as farming in connection with the orange and olive groves on the Ranch.

"There is a duty in the courts to see that the provisions of the Bankruptcy Act are not abused and that its privileges are extended only to those who are within its contemplation. While it is true that a farmer may avail himself of the benefits contained within Section 75 of the Bankruptcy Act * * * that rule has no application where a subterfuge has been created by one not a farmer whose obvious purpose is to circumvent and evade the statutory essentials and thereby temporarily escape liability upon his obligations." In re Christin, D.C., 50 F.Supp. 78 at page 81.

Records of the company were not available at any of the hearings. It was uncontradicted, however, that no corporate stock was ever issued. No showing was made as to what, if anything, became of the interests of the incorporators other than Newton and Hodgson. The Company, accordingly, failed to establish that "at least 75 per centum of the stock is owned by actual farmers."

Evidence, in addition to that referred to above, goes to show that Newton was not a farmer within the meaning or intent of Section 75. His occupational activities, rather, had to do with various promotions, including the borrowing of money between deals. During the years immediately preceding the filing of the petition of the Company herein, he embarked on numerous ventures unrelated to farming.

It is therefore concluded that Noel Newton was not a farmer within the meaning of Section 75; and that the N. H. Development Company was not a farming corporation within such meaning. The recommendation of the Conciliation Commissioner was based on sufficient testimony, and is hereby approved.

It is further held that the evidence subsequently introduced in this court proved, even more conclusively, that the Company was not entitled to the benefits of the provisions of the Bankruptcy Act under which its petition herein was filed.

It is hereby ordered that the above entitled proceeding be, and the same hereby is, dismissed.