### In re NICHOLSON.

No. 2373.

District Court, E. D. South Carolina.

Dec. 28, 1940.

L. C. Wannamaker, of Cheraw, S. C., and James E. Leppard, of Chesterfield, S. C., for alleged bankrupt.

John D. Nock, of Cheraw, S. C., for petitioning creditors.

WYCHE, District Judge.

An involuntary petition in bankruptcy was filed against Margaret Miller Nicholson, who admitted certain acts of bankruptcy, but defended upon the ground that at the time of the commission of said acts she was a "farmer" within the definition of the Chandler Act of 1938, 11 U.S.C.A. § 1(17). It is admitted by counsel that this raises the only issue in the case. The case came on for trial before me and a jury. At the conclusion of the evidence for the petitioners both parties made motions for directed verdicts and agreed that the question was one of law and that the case should be withdrawn from the jury and decided by the court.

The undisputed evidence shows that many years ago the father of Mrs. Nicholson gave her several tracts of farming land. For some years prior to January, 1938, John B. Nicholson, the husband of Mrs. Margaret Miller Nicholson, was engaged in the operation of a mercantile business in the town of Jefferson with his father under the firm name and style of "P. A. Nicholson & Son". In January, 1938, the mercantile business being heavily involved, P. A. Nicholson, J. B. Nicholson, and Margaret Miller Nicholson entered into an agreement whereby Mrs. Margaret Miller Nicholson and J. B. Nicholson, in consideration of the conveyance by P. A. Nicholson to them of his interest in said mercantile business, duly assumed the payment of all of the debts and liabilities of "P. A. Nicholson & Son". This was the first time that Mrs. Nicholson had anything to do with the mercantile establishment. At the time of this transaction, P. A. Nicholson & Son owed Williams & Shelton, the principal creditor in this proceeding, in excess of $6,000, the greater portion of the debt now owing to it. John B. Nicholson continued to operate the store until his death on the 23rd day of January, 1939. Her husband having failed in the mercantile business, as a last resort, had his wife, the alleged

bankrupt, to underwrite the debts contracted by himself and his father and finally to involve her separate estate which had been given to her by her father.

The evidence shows that Mrs. Nicholson lives on a lot containing four or five acres adjoining a farm which was cultivated by Lonnie McCoy as a sharecropper for Mrs. Nicholson under an agreement whereby Mrs. Nicholson furnished the land and the fertilizer, and McCoy, the labor, the stock and the tools. McCoy testified as follows:

"Q. As a matter of fact didn't you go to her home at least once a week in arranging your farm operations? A. Yes, sir, I went once a week, yes sir.

"The Court: You went to her home once a week to get instructions how to run your farm? A. Yes sir, we would swap ideas, I would say I knows all about farming but I like to swap ideas.

"Q. You got her approval and her instructions in the operation of that farm every week? A. That is right. * * *

"Q. All this time she was still living in her house in Jefferson, she didn't live on the farm? A. Yes, that is right."

The fertilizer was bought and the cotton sold in the name of Mrs. Nicholson. From this farm she received a good portion of her living in pork, poultry, eggs, vegetables, feed stuffs. She received agricultural benefits (1/2) in the amount of $80; she received from the sale of farm products (1/2) about $500 from the sale of cotton; $75 from the sale of cotton seed; and she paid the fertilizer bill in the sum of $140. This income from the sharecrop together with the rents received from the other farm land is the only income Mrs. Nicholson received this year. It is true that Mrs. Nicholson received her living from the farm lands during the year 1940, and that she did not have any other occupation during that year.

The acts of bankruptcy alleged were, firstly, conveying the farms with intent to hinder and delay her creditors, and, secondly, permitting judgments which created liens on her property to be recovered, and failing to discharge them within thirty days. At the time the judgments were recovered Mrs. Nicholson had divested herself of all of her farm property, and owned only her residence in the town of Jefferson, South Carolina.

■ Before the amendment of 1938 (Chandler Act) the Bankruptcy Act defined a farmer as "a person engaged chiefly in farming or the tillage of the soil". Bankr.Act, § 4, sub. b, as amended, 47 Stat. 47, 11 U.S.C.A. § 22, sub. b. Under this definition the following were held not to be exempt: (1) Owner who lets farm to a tenant, retaining general supervision, even though he has no other active business, In re Leland, D.C.Mich., 185 F. 830; (2) wife who owns land, which is farmed by husband, In re Johnson, D.C.Minn., 149 F. 864; (3) owner and operator of a large farm, a large part of whose indebtedness was incurred in another business, In re Brown, 9 Cir., 253 F. 357; (4) owner of 4,500-acre farm, on which live tenants who paid owner one-half of the crops, owner devoted larger part of his time overseeing the farm, but lived in town and engaged in milling business, out of which most of his indebtedness arose, In re Brown, D.C.Mo., 284 F. 899; (5) owner who rented his farm to tenants, and managed his own and other farms, and worked on commission for a produce firm, Chandler v. Metomkin Bank & Trust Co., 4 Cir., 86 F.2d 370; (6) owner who leased his two farms on shares, but did not live on either, In re Glass, 7 Cir., 53 F.2d 844.

■ An important consideration has always been whether the indebtedness arose from farming operations or from other business enterprises. In re Brown, D.C. Mo., 284 F. 899.

Has the Chandler Act of 1938, 11 U.S. C.A. § 1 et seq., relaxed the rule? The entire purpose of the act seems to be to the contrary. In at least nine particulars, in addition to the change as to farmers, the act was strengthened in favor of creditors. The old act exempted "a person engaged chiefly in farming or the tillage of the soil". The new act exempts a "farmer", and defines the term as follows: " 'Farmer' shall mean an individual personally engaged in farming or tillage of the soil". 11 U.S.C.A. § 1(17). The definition goes on to include dairy, poultry, and livestock producers, the principal part of whose income is derived from any one or more of such operations. The income provision applies only to those in the related pursuits, who may be included in the term "farmer" if the income requirement is met.

It will be noted that the change in the definition of "farmer" consists in dropping the word "chiefly" and substituting the word "personally", apparently a restriction of the definition. "Chiefly" is defined in Webster's New International dictionary as follows: "In the first place; principally; preeminently; above all; especially; for the most part; mostly; mainly." The adverb "personally" is defined in Funk & Wagnall's dictionary, "in proper person; not through an agent; individually"; and in Webster's International dictionary, "done in person; without the intervention of another; direct from one person to another; engaged or present in person"; and in New Century dictionary, "involving the actual actions or presence of the person himself, as opposed to that of a deputy or representative."

The facts in the case of Benitez v. Bank of Nova Scotia, 1 Cir., 109 F.2d 743, are somewhat analogous to the facts in this case. A lady was interested in a large community farming operation and received substantial agricultural benefit payments from the government. She raised chickens and pigeons from which she had a profit of about $50 each month. The court held that she did not qualify as a farmer under the new definition, and she then took the position that the old definition in section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, had not been repealed and that she could qualify under the terms of the old act. The court held that the new definition applied to section 75 and barred her. In a per curiam opinion the court indicates that the new definition embodied a stricter rule as to what constitutes a farmer than does the old.

In my opinion the nature of the alleged bankrupt's activities, so far as looking after her farms is concerned, under the foregoing definitions of "personally" cannot constitute her a farmer as defined in the Bankruptcy Act. She had nothing to do with actually tilling the soil. The sharecropper furnished the stock, the labor, the tools and farming implements. She did not actually live upon the farm, but upon a tract in the town of Jefferson, adjoining it. She in effect took produce as rent instead of cash, and in my opinion the relation between her and McCoy was that of landlord and tenant instead of farmer and laborer. It is difficult for me to see how one who does not own any livestock, tools or farming implements can be said to be "personally" engaged in farming or tillage of the soil as defined in the Chandler Act. Furthermore, the financial difficulties of the alleged bankrupt did not arise from her so-called farming operations. They arose from operations of a mercantile establishment. This fact must be considered in determining the question before me.

For the foregoing reasons, I must conclude that the evidence is sufficient to establish the fact that the defendant was not a farmer, as defined in the Chandler Act, at the time of the commission of the acts of bankruptcy. Counsel may present an order in conformity herewith.