## SMITH v. WHITE et al.
### No. 11712.

Circuit Court of Appeals, Ninth Circuit.
Feb. 16, 1948.

Corbin & Orme, of Phoenix, Ariz., for appellant.

Knapp, Boyle, Bilby & Thompson and Arthur Henderson, all of Tucson, Ariz., for appellees.

Before MATHEWS, BONE and ORR, Circuit Judges.

BONE, Circuit Judge.

This is an appeal from an order of the district court dismissing appellant's petition for relief under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, upon the ground that appellant is not a "farmer" within the comtemplation of the Act.

Prior to World War II appellant had been a farmer and farm owner for a number of years. During the year 1942 appellant entered the contracting business and began to take government contracts or

subcontracts for the clearing and grading of certain air bases being constructed in the State of Arizona. For two to three years thereafter appellant engaged in contracting operations and for several years maintained an office in the City of Phoenix. For the year 1944 appellant leased a portion of his farm and did no farming whatever. Although appellant testified that he lived on the farm and spent a portion of his time acting in a supervisory capacity or doing some work about the farm throughout the period he was in the contracting business, it is apparent that substantially more of appellant's time and energy during this period were devoted to his contracting venture than to his farming activities. (It may parenthetically be noted that appellant's testimony at the hearings below as to the dates, duration, nature and extent of his various operations was characterized by a regrettable lack of candor and cooperation.) Appellant returned to full-time farming in 1945 and has been exclusively engaged therein since that time.

The schedules filed by appellant reveal the following information. In consequence of his contracting business, appellant incurred debts in the approximate amount of $220,000. Some $28,000 additional indebtedness resulted from his farming. His farm properties are listed as worth over $168,000. His listed assets from the contracting business also total about $168,000 (including a $123,000 claim in litigation and $44,000 in judgments on appeal). It is clear that had it not been for the business venture, appellant would be today in a sound financial position. Appellant in his brief concedes "that the evidence establishes that the larger part of his indebted-ness arose out of an unfortunate venture into the contracting business, and that while his farming activities made a profit, his contracting venture resulted in unfortunate and heavy losses."

In March, 1947 appellant filed a petition in the district court for relief under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, which relates to agricultural compositions or extensions. The matter was referred to a conciliation commissioner and meetings of the creditors were held. Appellant was unable to obtain the assent of a majority of his creditors to his proposal for extension.[1] Appellee creditors of appellant objected to the proceedings, contending that appellant had failed to prove he was a farmer within the purview of the Act. The conciliation commissioner reported to the district court that he believed he was without authority to determine the jurisdictional question presented, and the district court, after holding a hearing on this question, dismissed appellant's petition "on the grounds and for the reason that he [appellant] is not a farmer within the meaning of Section 75 of the Bankruptcy Act."

Section 75, sub. r of the Bankruptcy Act is set out verbatim in the margin,[2] but so far as pertinent to our inquiry it defines the term "farmer" as including "an individual who is primarily bona fide personally engaged in producing products of the soil * * * or the principal part of whose income is derived" therefrom.

The parties on appeal agree that the only issue before this court is the correctness of the lower court's decision that appellant is not a farmer within the meaning of the Bankruptcy Act.

[1] 11 U.S.C.A. § 203, sub. g provides that an application for confirmation of a composition or extension proposal may not be filed until it has been accepted by a majority of the creditors. 11 U.S.C.A. 203, sub. s provides that a farmer failing to obtain such acceptance of a majority of the creditors may ask to be adjudged a bankrupt. Appellant never reached the point in this proceeding where he might petition the court under the latter section.

[2] "For the purposes of this section and section 22(b) of this title the term 'farmer' includes not only an individual who is primarily bona fide personally engaged in producing products of the soil, but also any individual who is primarily bona fide personally engaged in dairy farming, the production of poultry or livestock, or the production of poultry products or livestock products in their unmanufactured state, or the principal part of whose income is derived from any one or more of the foregoing operations, and includes the personal representative of a deceased farmer; and a farmer shall be deemed a resident of any county in which such operations occur." Section 75, sub. r, Bankruptcy Act, 11 U.S.C.A. § 203, sub. r.

Appellant contends that he has been a bona fide farmer and his principal source of income has been from farming during the entire period here involved, and that he must therefore be held to come within the Act *regardless* of the source of his indebtedness. Appellee contends that a person engaged in farming cannot venture into a distinct and separate business for several years, incur substantial debts in such separate business, then take refuge from commercial insolvency by returning to his farm and claiming the benefits accruing to a "farmer" under the Act, although his farming income would otherwise have kept him solvent.

We thus are faced with a novel facet of an often litigated subject. Can a farmer, after embarking on, and incurring debts in an unrelated business venture, return exclusively to farming and by this procedure occupy and enjoy the legally protected status of a farmer as against his business creditors? Industry of counsel and our own research have not disclosed a case, among the many decisions dealing with the status of a farmer under the Act, wherein this specific question has been squarely presented and decided.

Brief reference to the background and purpose of Section 75 of the Bankruptcy Act may be helpful. Farmers, because of the seasonal unpredictability of agriculture, have traditionally been protected from involuntary bankruptcy. 11 U.S.C.A. § 22, sub. b; see In re Doroski, D. C., 271 F. 8. In the grim economic nadir of the early 1930's, the farmers' special plight called for further measures of relief. Disproportionately depressed prices of farm produce, deflated land values and mortgage foreclosures on an unprecedented scale, imperilled the livelihood of nearly half the nation's population. Among several enactments in the year 1933 for the purpose of alleviating the farmers' distress was Section 75 of the Bankruptcy Act: it provided assistance by way of composition and extension agreements to farmers whose affairs did not necessitate liquidation. The later Frazier-Lemke Act was passed as an amendment to Section 75, adding subsection s, enabling the farmer-debtor to petition to be adjudged bankrupt in the event a majority of creditors failed to agree to composition or extension, and designed to keep him in possession of his farm. 11 U.S.C.A. 203, sub. s. While Section 75 was originally to be effective only until 1938, it has since been extended several times. When it was last extended in 1944, the House Committee on the Judiciary reported that the Act "was designed to relieve distressed farmers who were in default on their farm mortgages and to relieve agriculture from the effects of the deflation in land values resulting from the depression."[3] This sort of language carries the strongest sort of implication that the plight of the bona fide "dirt farmer" was the real inspiration for the legislation. This inference seems inescapable and leads logically to the rational belief that Congress intended that the case of a farmer who seeks relief from indebtedness occasioned solely by his unsuccessful venture in a commercial field completely foreign to his agricultural pursuits should not come within the orbit of Section 75.

It has been held repeatedly that it was not the intention of Congress that the Act be employed, and a person cannot invoke it, by making use of farm property, as a subterfuge to attain relief from indebtedness. In re Carter, D. C., 38 F.Supp. 726; In re Ripley, D. C., 40 F.Supp. 850; In re Christin, D.C., 50 F.Supp. 78; In re N. H. Development Co., D. C., 62 F.Supp. 722. However, these and many similar cases do not present the exact question confronting us in the case at bar.

Appellant contends that a decision directly in point is Stoller v. Cleveland Trust Co., 6 Cir., 133 F.2d 180. In that case the petitioner divided his time and energy between his farm and his seed business. He kept the records of both businesses as a unit so that an audit of either separately was not possible, but the court found that

---

[3] Report 1127, House Committee on the Judiciary, U.S. Code Congressional Service 1944, p. 974. See also Senate Report No. 1045, 76th Cong., 1st Sess. (1939) p. 2. For an illuminating survey of the background of the Act, see: In re McGrew, 3 Cir., 126 F.2d 676.

his financial straits resulted directly from the operation of the seed business. The court held that the petitioner was a farmer within the meaning of the Bankruptcy Act.

Appellees distinguish the Stoller decision on the basis that there the debtor was not engaged in a business wholly disassociated from farming, and appellees concede that a farmer might engage in a related pursuit such as the feed or fertilizer business without losing his status as a farmer. It goes without saying that the contracting business is in no wise related to agrarian activities. The seed business involved in the Stoller case was seasonal, as is farming, and was not divorced from but rather was directly dependent upon the field of agriculture. Appellant argues that the Stoller decision makes no such distinction; but the court there was not faced with the peculiar facts nor the specific question we have here.

Furthermore, it may be noted that in the Stoller case it was difficult, if not impossible, to distinguish which debts were attributable to each of the two businesses involved. Whether or not the debtor has intermingled the liabilities from his farming and his other occupation is a fact which it would seem should be considered. Appellant here has evidently kept separate records for his farm and his contracting business. In any event, the liabilities of the respective enterprises have been so listed and explained that they present no difficulty in determining their source or segregation.

Appellant contends that a debtor's status as a farmer is to be determined only as of the time he files his petition for relief, citing Mulligan v. Federal Land Bank, 8 Cir., 129 F.2d 438, and Jordan v. Federal Land Bank, 8 Cir., 139 F.2d 203. We do not quarrel with the holdings of those cases that a person who is not engaged in farming at the time of filing his petition,

despite his vocation in prior years, does not qualify as a farmer under Section 75 of the Bankruptcy Act. But those decisions cannot be held authority on an issue which the court did not there confront or decide: Can a person incur indebtedness in a business utterly unrelated to agriculture, then by showing that he is engaged in farming at the time of his petition under Section 75 be shielded from his commercial creditors?[4]

Likewise, appellant's argument that his principal source of income has been continuously derived from farming—necessarily, since his commercial venture was the only source of his present financial straits—does not answer the query to which our opinion is addressed.

The United States Supreme Court in interpreting Section 75, sub. r of the Bankruptcy Act has used the following, often quoted language: "The words 'primarily engaged,' as we find them in the first branch of the definition, do not constitute a term of art. The words 'income derived from farming operations' do not constitute such a term. In every case the totality of the facts is to be considered and appraised. * * * We emphasize the fact afresh that the words of the statute to which meaning is to be given are not phrases of art with a changeless connotation. They have a color and a content that may vary with the setting. * * * In the setting of this enterprise, the totality of the circumstances, the roots of the respondent's income go down into the soil." First National Bank & Trust Co. v. Beach, 301 U.S. 435, 438-441, 57 S.Ct. 801, 803, 81 L.Ed. 1206.

The decisions are too numerous to warrant mention which in dealing with the application of Section 75 have iterated that each case must be resolved on its own peculiar facts and circumstances.

---

4 Under 11 U.S.C.A. § 22, the determination of whether one is a farmer and exempted from involuntary bankruptcy, is understandably made as of the time the act of bankruptcy is committed—the debtor would normally not be concerned with or have any choice as to whether he came within the operation of the statute at the time he committed such an act of bankruptcy. However under 11 U.S.C.A. § 203, with which we are here concerned, one burdened with debts in the commercial world could deliberately forsake his business, take up or return to farming, and then voluntarily file his petition. The difference between the situations is readily apparent.

It has specifically been held that the source of the debtor's indebtedness, that is, from farming or from other operations, is an important factor to be considered in the determination of the debtor's eligibility to the privileged status of a farmer under the Bankruptcy Act. Brown v. W. H. Kenworthy & Son, 9 Cir., 253 F. 357; In re Brown, D.C.Mo., 284 F. 899; In re Nicholson, D.C., 36 F.Supp. 308, affirmed Nicholson v. Williams & Shelton Co., 4 Cir., 121 F.2d 740.

Where, as in the instant case, the debtor's real financial difficulties are admittedly caused solely by the failure of his business venture, entirely unrelated to his profitable farming operations, we see no reason why the source of his indebtedness should not be deemed of paramount importance. To accept appellant's theory that the nature of the indebtedness is immaterial, would be to sanction a farmer's venturing into any kind of business speculation, realizing heavy losses, resuming his agrarian pursuit exclusively, and then successfully petitioning for special succor as a "farmer". We do not believe that the bankruptcy privileges accorded to farmers were meant to cover such a case. To arrive at another conclusion would violate the unmistakeable purpose of Section 75 and would throw wide a gateway for evasion and chicanery. Nor do we believe that our determination is in any way obnoxious to the principle that "the [Bankruptcy] Act must be liberally construed to give the debtor the full measure of the relief afforded by Congress, lest its benefits be frittered away by narrow formalistic interpretations which disregard the spirit and the letter of the Act." Wright v. Union Central Life Insurance Co., 311 U.S. 273, 61 S.Ct. 196, 200, 85 L.Ed. 184.

By this we do not mean to say that a farmer who also engages in some other business, as a side issue, and derives income or contracts debts in connection with such other business, is thereby disqualified from gaining the protection which the law affords to farmers. "In every case the totality of the facts is to be considered and appraised."

Upon the facts in this case, we hold that the lower court correctly determined that appellant is not entitled to the status of a farmer within Section 75 of the Bankruptcy Act.

Affirmed.