McMILLIAN, Circuit Judge.
Appellant Ray E. Friedman & Co. (Friedman) seeks reversal of the district court’s [1] order dismissing its involuntary petition in bankruptcy. Friedman contends the district court erred in concluding that the alleged bankrupt, Brent Thomas Jenkins, was a “farmer” within the meaning of § 4(b) of the Bankruptcy Act of 1898,[2] and therefore exempt from an adjudication of involuntary bankruptcy. We affirm.
Friedman, a Chicago-based brokerage firm, commenced this involuntary bankruptcy proceeding on June 28,1978, alleging that Jenkins had fraudulently and preferentially transferred certain assets and property to local creditors during the months of February and March, 1978.[3] In part, these transfers were accomplished through the foreclosure and sale of property encumbered in favor of the local creditors. At this time, Jenkins was allegedly indebted to Friedman in the amount of $224,280. The debt resulted from losses incurred by Jenkins in commodities futures trading, mainly pork bellies, with Friedman acting as his broker.[4] Jenkins’ trading activities consist *186 ently resulted in losses; through his trading with Friedman in the first three months of 1978, Jenkins suffered a net loss exceeding $560,000. Funds were advanced by Friedman to cover margin call deficits incurred by Jenkins, who in turn borrowed a total of $330,000 from a local bank to repay the brokerage firm.
Following the transfer of property by Jenkins, Friedman initiated this action, seeking to have Jenkins adjudicated an involuntary bankrupt. Jenkins filed a motion to dismiss, contending he was a “farmer” and was therefore exempt from an adjudication of involuntary bankruptcy under § 4(b) of the Bankruptcy Act, 11 U.S.C. § 22(b). The Act defines a “farmer” as
an individual personally engaged in farming or tillage of the soil, and shall include an individual personally engaged in dairy farming or in the production of poultry, livestock, or poultry or livestock products in their unmanufactured state, if the principal part of his income is derived from any one or more of such operations.
11 U.S.C. § 1(17) (emphasis supplied).
After a hearing the bankruptcy court denied Jenkins’ motion, concluding that by transferring his farming assets, he had waived any right to claim exempt status as a farmer. On appeal the district court reversed and remanded for a determination as to whether Jenkins was a “farmer” within the meaning of the Act. The bankruptcy court on remand concluded that Jenkins was personally engaged in farming, but found that the principal part of his income was derived from his activities in the commodities market. Although he had consistently lost money in trading, the bankruptcy court concluded that the $330,000 Jenkins had borrowed to finance his trading activities constituted “income” for purposes of the Bankruptcy Act. Consequently, the bankruptcy court determined that Jenkins was not a “farmer” and denied his motion to dismiss. The district court on appeal again reversed, finding that the principal part of Jenkins’ income was derived from farming and that he therefore fell within the farmer exemption of § 4(b). This appeal followed.
Section 4(b) of the Bankruptcy Act expressly provided that certain classes of persons, including farmers, would be exempt from involuntary bankruptcy. 11 U.S.C. § 22(b). Section 1(17), quoted previously, establishes a two-fold standard for determining whether an alleged bankrupt is a “farmer” for purposes of the Act: (1) he must be “personally engaged in farming,” and (2) the “principal part of his income” must be “derived from .. . such operations.” The date of the alleged act of bankruptcy is the time when the determination of exempt status is to be made. 11 U.S.C. § 22(b). Where the issue is controverted, the petitioning creditor bears the burden of proving that the alleged bankrupt is not a farmer. See In re Hinrichs, 314 F.2d 384, 385 (7th Cir. 1963); In re White, 238 F.Supp. 454, 455 (D.Colo.1965).
We believe the definitional standard of § 1(17) is satisfied in this case. The bankruptcy court specifically found that Jenkins was “personally engaged in farming” from 1963 through the 1978 season; Friedman apparently does not challenge this finding. Further, examination of Jenkins’ income at the time in question supports the district court’s conclusion that the principal part of Jenkins’ income was derived from farming. The record indicates that Jenkins earned gross income of approximately $60,000 from his farming operations during the first three quarters of 1978. During this period, Jenkins also received $2,820 from the sale of hail insurance, a business he maintained in addition to farming. Jenkins did not realize any income from his commodities trading. Like the district court, we do not believe that the term “income” as used in § 1(17) was intended to include borrowed funds. Consequently, it is clear that the principal part of Jenkins’ income during 1978 was derived from farming. The requirements of § 1(17) are therefore satisfied in this case.
Friedman contends, however, that § 1(17) must not be applied literally, arguing instead that factors in addition to income, particularly the source of the alleged bank *187 rupt’s indebtedness, must be considered in determining whether a debtor falls within the “farmer” exemption. In this case, the company asserts, consideration of the source of Jenkins’ indebtedness, his commodities trading losses, would evidence an occupational pursuit other than farming. Friedman cites several decisions in which source of indebtedness was considered important in determining applicability of the “farmer” exemption, including In re White, supra, 238 F.Supp. 454, In re Beechwood, 42 F.Supp. 401 (D.N.J.1942), and In re Nicholson, 36 F.Supp. 308 (D.S.C.1940), aff'd sub nom. Nicholson v. Williams & Shelton Co., 121 F.2d 740 (4th Cir. 1941).[5] In each of these cases, however, the alleged bankrupt was found not to be personally engaged in farming. Similarly, Smith v. White, 166 F.2d 269 (9th Cir. 1948), upon which Friedman places primary reliance, is not controlling here. Smith involved a voluntary farmer-debtor relief proceeding under former § 75(r) of the Bankruptcy Act, 11 U.S.C. § 203. No longer in force, that provision included a slightly different definition of the term “farmer,” identifying persons “primarily bona fide personally engaged in producing products of the soil . . . or the principal part of whose income is derived from [such] operations” as coming within its scope. Further, while the debtor in Smith resided on a farm and did “some work” there, “substantially more” of his time and energy were devoted to a contracting venture than to farming. Id. at 270. Friedman has not shown a similar level of nonfarming activities by Jenkins in the instant case. Although Jenkins’ commodities trading occurred on a regular basis and resulted in substantial losses, Friedman has not established that his trading activities were more than a collateral venture, albeit an unsuccessful one.
In sum, we conclude that the requirements of § 1(17) are satisfied in this case.
Accordingly, the order of the district court is affirmed.

. The Honorable Paul Benson, Chief Judge, United States District Court for the District of North Dakota.

. The involuntary petition in bankruptcy was filed prior to October 1, 1979, the effective date of the Bankruptcy Reform Act of 1978. Consequently, this proceeding is governed by the provisions of the Bankruptcy Act of 1898, as amended.

. Friedman also initiated a separate civil action, now pending, based upon the alleged fraudulent conveyances.

. Friedman acted as Jenkins’ broker from November 1977 to March 1978. Since 1972, Jenkins had also utilized the services of another brokerage firm, the G. H. Miller Co., in his commodities trading activity. Jenkins incurred significant losses through his trading with Miller as well.

. To support its contention that source of indebtedness is a factor to be considered in ascertaining an alleged bankrupt’s status as a “farmer,’’ Friedman also relies upon several earlier decisions, including In re Macklem, 22 F.2d 426 (D.Md.1927), In re Disney, 219 F. 294 (D.Md.1915), and In re Brown, 132 F. 706 (S.D. Iowa 1904). These cases, however, involved a predecessor definition of “farmer,” which provided that “a person chiefíy engaged in farming” was entitled to exempt status under § 4(b). As such, they are not controlling here.